Good morning. It's great to see everybody. Our first case is Hilsenrath v. School District of the Chathams, No. 20-3474. And, Counsel, are you applying to reserve some time for a reply? Yes, Your Honor. I request a three-minute rebuttal time. That will be granted. Thank you. Thank you, Your Honor. My name is Richard Thompson. Sir, you can take your mask off when you're arguing, if you'd like. Okay. Thank you, Your Honor. Sure. My name is Richard Thompson. I represent the plaintiff appellant, Libby Hilsenrath, next friend of her minor son, C.H. We're here because the New Jersey Chatham Board of Education, as a part of its seventh grade mandatory curriculum on world culture and geography class, and more particularly the unit on Middle East and North Africa, violated the establishment clause of the First Amendment to the Constitution. At issue are two videos dealing with the religion of Islam, namely Intro to Islam and the Pillars, Five Pillars. Her son was directed to watch. In a nutshell, basically our position is that these videos presented religious opinion and beliefs as if they were facts that encouraged Islamic prayer, that presented Islam as superior to any other religion and non-religion, and that encouraged the seventh grade 12-year-olds to convert to Islam. Counsel, we're very familiar with the facts. We've seen the videos, so maybe we can just dive into some of the issues here. First off, standing. Perhaps you could address standing. Yes, Your Honor. She has standing. Well, the court of the district court said she had standing because she filed in her prayer nominal damages that under the recent Supreme Court case, nominal damages provide standing to the plaintiff, and that was the main argument we made, although she was also representing her son as next friend, who is a student, who was confronted with what we consider unconstitutional videos that violated the Establishment Clause. Well, how about injunctive and declaratory relief? Perhaps you could deal with standing in those. And actually, particularly, I'm interested in, I was a little confused. Is the injury by the mother relevant to our analysis as an individual? I'm sorry, I didn't understand the question. Is the injury to the parent, as opposed to the kid, is that relevant to our analysis of standing in terms of declaratory or injunctive relief? I would say it doesn't in this respect. The courts in the limit test and the endorsement test don't look at the particular student who has claimed that her his or her constitutional rights were violated. What they look at is what a reasonable hypothetical 12-year-old or seventh grade would review and take away from that lesson plan. So it normally is talking about the endorsement test, which this court has accepted as well as the limit test, indicating that what the focus is not on the individual student, but on the reasonable, objective, hypothetical student that is confronted with the videos that I just described. Now, I think it's very important because, as the court just said, in these kinds of cases there are delicate balances that have to be made, and there are critical issues as to the facts that the court is dealing with. And I think it's important to look at the facts because I think, especially the intro to Islam video, is the quintessential way that you should not teach religion in a public school. Well, counsel, just if I can interrupt there, you're making a fact-based inquiry because, as I understand it, you're urging us to follow the district court's lead and continue to apply the limit test as one of the ways that this case should be evaluated. You don't discuss American Legion in your brief, but I'm wondering if the Supreme Court's more recent discussions of how to consider the First Amendment's treatment of religion are relevant to this case and if so, how? I'm sorry, I didn't hear the question. You rely on Lemon, as did the district court. The Supreme Court has more recently addressed the First Amendment's religion clauses in American Legion. How does American Legion factor into your arguments? Are you talking about the Fulton v. Philadelphia case, or are you? Never mind. Proceed with your argument, counsel. The Bladensburg Cross case. In the Bladensburg Cross case. And just to follow up, I have the same concern, I think, that I understand Judge Mady's concern to be, which is you want us to apply Lemon in endorsement, but if we don't apply Lemon or endorsement, you lose the case, right? If we don't apply Lemon and the endorsement? Right, because in American Legion, the court moved away from Lemon, and so if we review your case under that rubric, you're going to lose, which is, I assume, why you're asking us to apply Lemon and the endorsement test, which has been associated with the second prong of the Lemon test. Right, Your Honor. Still, there is so much criticism of the Lemon test throughout the years. Several judges have complained about it. But when it comes to public schools, they always relate back to the Lemon test, and this court still considers the Lemon test along with the endorsement test. I think that the court had a very difficult time in the Bladensburg case. There were some very interesting facts there where that cross had been up for almost 90 or 100 years, and at the time that it was erected, it was not looked at as an endorsement or as an attempt to push Christianity on anyone. The cross was universally looked at as a symbol of sacrifice, and if you look at the history of it, so the court, I think, tried to save the cross, looked at the Lemon test, and even though there was a lot of criticism on the Lemon test, ultimately used that. Right, didn't apply it. So if we do apply the Lemon test in this case, do you concede that your argument really relates to prong two? Because under prong one, there's a secular purpose here, and that's easy to satisfy. The secular purpose is to teach the students about a variety of world religions, and there's no real entanglement. So aren't we really focused on whether this has the primary effect of advancing religion? Is that the essence of your argument? Yes, Your Honor. We contest every element of the Lemon test. Even though they pronounce a secular purpose, that secular purpose cannot be fulfilled by an unconstitutional action as they took in showing these videos, and therefore that prong is taken as a effect of secularism not being fulfilled. Normally the courts find it easy to find a secular reason, and that's what they always do, but the courts have always said that you cannot use a sham secular purpose. In other words, in the creation cases where they try to balance creation with evolution, they had this very grand idea that they were going to be fair, and they were really promoting science. The court looked beyond that and said, even though you have this great object or goal of education, you still have to follow the Constitution. You just cannot hide your purpose. And so again... Well, along the lines of what Judge Hardiman was saying, in looking at prong two, don't we look at the full context? I mean, your adversary points out that this is at most two lessons out of 135 that touched on this. I mean, in the context of this whole course, it's not a whole heck of a lot. Well, context is very important, Your Honor. I think that's one of the things that we wanted to talk about, is that if you look at this one five-minute video, you can't help but come away that this did not have any kind of educational purpose at all, even though the school district said that we were trying to prepare students for the 21st century and global citizenship. They could do that, but they still have to do it constitutionally. And we think that they did not do it constitutionally when they presented these videos to the children. And I don't know if you had a chance to look at the videos. I could describe them to you. We did. Because I think this is a quintessential example of how not to talk about religion in the public schools. Well, do you concede that mention of religion at all is not offensive to the Constitution? I mean, just the description of what different world religions are? There is no question that schools can teach about religion, but they can't teach religion. And that famous case where they normally use that phrase as long as they teach it objectively. And if you look at what the definition of objectively is, it's very clear that it is not opinion. It's factual. The Blacks Dictionary basically defines objective as an observable phenomenon. As opposed to what a person may believe or the impression that the person has. So that caveat is very important. That's the Abington versus Shemp case. And that's the case that everyone normally looks at when they say, well, we can teach about religion. Yes, you can teach about religion, but you have to do it constitutionally. And that's where it has to be objective. Now, the school district said, well, objective doesn't mean it has to be factual. All it means is that the teacher has to be neutral. And so as long as the teacher is neutral, then the teacher is able to put anything in a video, even though they may be blatantly unconstitutional. And all she has to do is sit back and say nothing or say that I don't object to it. And that the court really looked at. And your time, my time. But he has a question for you. OK, counsel, you briefly mentioned the concept of parental rights in your briefs. But I don't understand you to be making some sort of argument regarding parental rights in this matter. Is that correct? Again, what is what is my what is the question, Your Honor? My understanding was that you raised an issue regarding the rights of parents in this setting. Did you really raise that or was this just a point in your brief that wasn't really for the court's consideration? You know, having a hard time. Well, if I could, if I could maybe say it a different way, I kind of started off. Hilsenrath is bringing the claims on behalf of the child, right? Not individually. Correct. OK, I don't know. I'm sorry. Is that the question? Yes, she is bringing it as next friend of the child. She did not bring it individually. But the court cases say that even though the case is brought on behalf of the child, again, the courts looks not at the child and not what the particular child thinks is a violation, but what the hypothetical reasonable child in the in this case of the middle school, what that child would think. All right, counsel, we'll get you on rebuttal. Thank you. Thank you. Please. I don't think I've ever had a case where both both counsel the same surname. True. Mine is married. Good morning. Morning. May it please the court. My name is Ruby Kumar Thompson, and I represent the Board of Education for the School District of the District of the Chathams. Your honors, it is well established that where education is concerned, the establishment clause inquiry is shaped by the educational context in which it arises. This is mainly due to the fact that public schools are vitally important in the preparation of individuals for participation of citizens and are recognized to be the vehicles for inculcating fundamental values necessary to the Do you mind if I just ask a quick question at the start regarding the same colloquy we had with your adversary? Where do you think Lemon sits in this case at this juncture? I know you might be inclined to think it's right because you won in the district court. But what should we do with Lemon as we consider this analysis? That's a very good question. Lemon, as we know, has always been applied in the educational context. No court has veered from the Lemon test to date. In American Legion, they also distinguish Lemon as only being applied or consistently being applied in the educational setting. However, in this case, we don't have a claim that is based on any type of conduct or teaching or instruction that was in the classroom or action by the teacher. What we have here is kind of a display case, whether or not these videos should have been displayed to the students and the content displayed to the students. This is curriculum, though. It's part of the curriculum. If Lemon is applied to things like high school invocation, Levy-Weissman, or prayer at a high school football game, I mean, if Lemon is applied in those cases, how can you say it wouldn't apply here? Those are all conduct cases, custom practice, and policies were involved there. Here what we have is a teacher who selected secondary videos to supplement her lesson and her lesson plan. But they're proselytizing videos. The second video, maybe you're OK on. The first video is a proselytizing video. We can go through what it says, right? May God help us all find the true faith, Islam? On and on. There are a multitude of these proselytizing statements in the first video. So if we apply Lemon, don't we have to conclude that that violates the second prong of Lemon? The second prong of Lemon is where many religious references go to die under the Constitution, right? Isn't that the case here? No, Your Honor. The reason for that is the video's content itself was not created by the teachers and was not shown in isolation to any of the students. In Levi-Weissman, the teachers didn't create anything. It was a high school student who wanted to go up and say a few words of a religious nature. That's even more tepid than what we have here, which is a directly – we have something that's curriculum that's proselytizing. This isn't some sort of non-denominational prayer. Absolutely not. But the proselytizing statements were used for a lesson not to be presented as fact but for a generalizations and bias lesson that directly related to the adopted curriculum for the students in terms of 21st century skills. If you look, you have to look at the video in context of what it was intended inside the lesson. The lesson wasn't without presenting it as fact. And I don't believe – I don't agree with Levi-Weissman. Was there a similar reference to – I mean, this was Middle East, right? Amina? So was there a similar lesson that had a video or a worksheet that talked about Judaism being the one true religion? In terms of the lesson of making generalizations and recognizing bias and learning how to discredit sources and opinions from facts, no, there was not. Islam was the religion. So Judaism didn't get equal time. Neither did Wicca or Christianity or any other religion that might have at some point touched on the Middle East. I don't believe the Establishment Clause requires equal time. I believe that the Establishment Clause – Permits favoring one religion over another? Absolutely not. It requires neutrality. And this video – That's certainly what the – I just want to say that's certainly what the cases say, whether the Constitution actually requires neutrality is a different question. But just sort of picking up on Judge Hardiman's point, if I can, Judge, and your response regarding Lemon. So let's for a moment assume we're not persuaded Lemon applies in this context. So then how do you see the American Legion analysis coming to play here? And does the conduct at issue run afoul of that history and tradition standard? I believe it would satisfy that as being comporting with the First Amendment and the Establishment Clause. Historically, school districts have always utilized various polarizing even ideas to teach lessons to the students. Not everything needs to be presented as fact. There's also critical thinking skills that the students must be imbued with. And that's where education comes in. There are these subtle differences. However, the lesson and the video, if you look at the PowerPoint, the PowerPoint around the context of it, and we know from Supreme Court precedent that even the Bible and the contents of the Bible, even if those could be considered proselytizing, may be appropriately used. So there we go into terms of content versus use. And I believe that the Establishment Clause is only violated when the school district uses the content in an impermissible manner that violates the Religious Clause. And we know that the Bible, other historical religious references, even books and poems in certain districts have been utilized for various lessons. It's not all about recitation and regurgitation. So the Chathams can use the Bible? Your argument is the Chathams could use the Bible in seventh grade curriculum? Depending on how it's used. And they could focus on passages that say things like, you know, they could have a lesson that focused on John 3.16. And that would be fine. Or something else that says, you know, I am the way, the truth, and the light. It could be I am the one true God, the Christian God, in the same way this video says Islam is the one true faith. You could teach that? Depending on the lesson. If it was a lesson about generalizations. Would cases allow that? I mean, I think, you know, look, under an original understanding of the Establishment Clause, you might be on very strong footing with that argument. But we've got a lot of case law that applies lemon, which is a lot stricter, I think, than, for example, the coercion test that Justice Thomas has advocated. Or any other sort of textualist or originalist understanding of the Establishment Clause, right? We've got this body of case law that very strictly polices religious references in public schools, don't we? Judge, I would disagree with that. I don't believe that they strictly police public schools. Judges and federal courts are cautioned not to get involved with curricular decisions with the schools. In fact, the school itself has a First Amendment right that's recognized for academic freedom. In order to teach the students how they teach the students and what they teach the students. I'm with you on academic freedom. But isn't the case law telling us pretty clearly that at least the Supreme Court in the last 50 years has told us that when it is of a proselytizing nature or even comes close to proselytizing, then it violates the second prong of limit. Well, here's the thing again, Judge. It wasn't the teachers who were proselytizing. The teachers were utilizing those statements of a third-party creator to teach a lesson about generalizations and to imbue critical thinking. Isn't that a thin reed to be relying upon? That somebody else said it and we're good? No, absolutely not. Next week they bring in a rabbi or a minister or a priest in the class. And the teacher just says, I've got an expert here. The expert's going to present the lesson. That's okay under your rubric. No, it would not be because under excessive entanglement, any time clergy is involved, that would lean towards violating the third prong. So, no. But if we're talking about the primary event. Could the clergy person, the clerical person, do a video and post it on Google Scholar? No, they may not. But a lay person. So, your argument is that as long as the Google Scholar video is created and produced by a lay person, it can have direct religious proselytizing content and that's okay. But if the very same video with the exact same content were written and produced by a cleric, it's unconstitutional. Well, we violate this. You have to look at all three prongs in Levin, correct? So, I would concede that with excessive entanglement, the involvement of clergy is typically looked at to find that there was excessive entanglement. But how do you square that with Santa Fe? I mean, a football coach isn't a cleric. It's a football coach. What's this, you know, take a knee at 50-yard line? That's unconstitutional. Right. Levy-Weissman, there wasn't a cleric involved there, right? There was a high school student who wanted to give an invocation. That's correct. But that involved a direct religious exercise and activity. This did not involve, there was no religious activity or religious exercise that the children were directed to. When the football coach takes a knee at the 50 with some of the players voluntarily, all of the students in attendance, they're not required to do anything. They can look at their phones, they can listen to music, they can tell a joke, they can do anything. They're not required to participate. Same thing with the high school graduation. You have a student who gets up and the rest of the high school students do what they usually do, which is, you know, do their own thing. They might not even be paying attention. Right. Knock around a beach ball at graduation. Knock around a beach ball, right. Sure. So there's nothing compulsory at all about the audience. And the whole point of the endorsement test and the second prong of Lemon, according to the cases, is, as Mr. Thompson said, how would the reasonable viewer take this, right? Right. So if the reasonable viewer at the high school graduation in Lee would take the students' invocation as some sort of endorsement of religion, if the students sitting in the stands at the high school football game would take the coaches' action as some endorsement of religion, how here would not a seventh grader take this video as an endorsement of Islam? It's a very sort of compelling promotion of Islam, is it not? It is not, Judge. And the reason for that is that in this case, this video was integrated, as you recognize, into the curriculum and into a lesson. Praying at a high school football game has no connection to the curriculum whatsoever. So if you look at the cases in which it was found that there were proselytizing statements or an establishment clause violation, you see that it is completely unconnected with the curriculum or any secular lesson that is involved by the school district. And that's where Lemon balances the First Amendment academic freedom of a school district and a student's right to be free from religion within the schools. Here, there was no religious exercise. The teacher never expressed any favoritism of one religion or the other. We also had Hinduism and Buddhism later on in the course. You can't look at just the video. You can't look at adoption. No court has ever held that adoption of curricular materials alone could violate the establishment clause. You have to look at the context. And you have to look at either how it was intended to use. Here, we say it wasn't used at all. It was not assigned as homework. Those facts have not been disputed. We have it posted on a Google Classroom, which is why I say maybe this should be seen as a display case. Maybe it should be seen, and it wasn't even the videos. If the videos had been posted in the classroom playing without any context, I would agree with you. But that is not the case here. Counsel, it seems in your brief you were saying that the CH viewed these videos voluntarily. Is that really true? From the facts, yes. Well, it wasn't a part of the sort of reading and all that they were supposed to be doing? So the confusion here is, Judge, that they claim that it was required as homework viewing. Our teacher testified and said that she was a substitute. She was not the main teacher. Had it been used in the past in the PowerPoint lessons in class? Yes. It was never assigned as homework. But didn't the syllabus say that you're supposed to be reviewing this stuff? No. What happened is they point to the PowerPoint slide. If Your Honor would look at the last slide in the PowerPoint presentation, it says, in the slide, watch this video. It's not a homework assignment. It's just in the slide that was utilized and created many years ago and then agreed upon. Liz, I don't know. When the teacher's saying, view this video, I'm viewing this video, aren't I? I heard my son make the same argument the other day. Well, I didn't really have to read the video, right? It wasn't describing it. It just feels like that's a bit of a stretch, counsel, and I don't know how essential it is to. I think it's irrelevant. I agree with you because if you look at the PowerPoint slides, it also says, write down words to describe Islam. It didn't say anything about, you know, coercing them or adhering to them. Turning back to Judge Vladimir. There was a worksheet assigned in class, wasn't there? There was a worksheet to take notes when the. And CH was required to complete portions of the worksheet, including filling in the blanks of the Shahada. Correct. And so the student was supposed to fill in the blanks. It said, there is no God but blank, and blank is his messenger. And to complete the assignment, the student had to fill in the words, there is no God but Allah, and Muhammad is his messenger, right? He did. And that's not a religious exercise. That was to ensure that the information that was imparted on the second PowerPoint presentation. But it doesn't say, Islam teaches that there is no God but Allah, and Muhammad is his messenger. It says, there is no God but Allah, and Muhammad is his messenger. That's a statement of religious belief, right? No. You have to look at what was being taught. Teaching children the basic tenets is permissible in school. You have to look at it in conjunction with the video. If the worksheet is being used in conjunction with the PowerPoint. The next year in the seventh grade in the Chathams, a teacher can get up and say, you're going to fill out this worksheet, and the students are going to have to write the Ten Commandments, and that's fine. He didn't have to write the Ten Commandments. He just had to fill in a worksheet in order to take notes. Well, instead of filling in Allah and Muhammad, I'm giving you a hypothetical. Can the teacher require that the students fill in the Ten Commandments? Absolutely. If it's in connection with a lesson. And that's constitutional. Absolutely. If it's in connection with a lesson that requires that student to fill in the Ten Commandments and to understand what those commandments are in connection with a lesson. Now, I'm not an educator, which is why we leave the expertise to the educator in how to deliver these lessons. It's the delivery of the lesson, again. It's not the content of what the child is asked to view or read or discuss or think. It's not for a religious purpose. It's for the curriculum. And if it's a legitimate pedagogical exercise, then I would say it does not violate the Constitution. Well, but does it violate the Lemon Test? No, it does not violate the Lemon Test. Requiring a student to fill in Allah and Muhammad, requiring a student to fill in the Ten Commandments, does not have the primary effect of advancing religion? Absolutely not. In isolation, Judge, yes. In isolation, yes. But not in the context in which this worksheet was developed and utilized by the teacher in the classroom. All right. And just to, not to belabor it, but to make sure I understand your point, I understand what you're saying about context, but you're also saying the teacher that creates this curriculum is not required to give equal time to a variety of world religions. The teacher can focus on one world religion or a couple of world religions. I believe with, if I could cite the United States Supreme Court case in which the clergy, where they held that the one, having just one religious clergy come in and give a prayer. Yeah, but, well, right. But, see, this is, I think, the basis of the panel's questions about Lemon and the applicability of Lemon. Marsh v. Chambers, the legislative prayer case, that's an exception. They don't apply Lemon. This is what's tricky for us, right? When the court allows religious exercise or practice to be constitutional, it invariably does not apply the Lemon test. And when it's invalidating religious reference practice, it applies the Lemon test, which is why I'm wondering whether, for you to prevail in this case, you need us to not apply the Lemon test and go in a different direction, somewhat similar to what the Supreme Court did in American Legion. Your Honor, Chatham School District met its educational mandate and met its policy to remain neutral and not favor or disfavor any religion. In the manner in which these religions were presented to the student in the World Cultures and Geography class, including Hinduism and Buddhism, and as you know, you have a comparison chart of Buddhism with Islam, from the previous lesson that was inserted in February in a year-long class, it absolutely depends on the context. And I believe that the Chatham School District could satisfy both the primary effects, if you would just look at the context of the lessons that were being presented to the students, the way that the videos were intended to be utilized within those lessons, it all integrates together to show that the school district absolutely had a secular purpose, never favored or disfavored Islam in any way, shape, or form, never encouraged CH to visit a mosque, whether out of curiosity or for religious purposes, never coerced them, and by the way, I do believe that coercion, the cases do support, that those are only for free exercise claims. There is no free exercise claim in this case. There is no claim by the parent of any violation of her right to raise her child in any type of religious belief. So when we look at the framework of this case and what occurred in this case and how the videos and the worksheet were utilized or intended to be utilized in the context of the school district's curriculum, objectives, goals, and lesson plans, you'll see that they are entirely secular and would satisfy any task, whether you depart from Lemon or you look at the task that was submitted by the Supreme Court for display cases. Okay. Thank you, Counsel. Thank you. And we'll hear from Mr. Thompson. Your Honor, just a few points. First of all, the video intro to Islam was not vetted by the school before it was introduced to the 12-year-old 7th graders. In fact, the superintendent, La Souza, was not aware that there was a video that was being required in the 7th grade unit on Middle East and North Africa until it was brought to his attention by my client, Libby Hilsenrath. How does that help you? That seems to hurt you. If it got posted to Google Classroom by accident or inadvertently, how does that help you? Well, they basically said that it wasn't inadvertent, that ultimately they looked at it. The school assigned the responsibility to Superintendent La Souza, who looked at it and then said it was okay. The school board ratified it, and that's how the judge indicated that we did not need to sue all the members of the administrators, that the school board, because they delegated that authority to Superintendent La Souza, it became a policy of the board. And therefore, that policy implementing the intro to Islam became the policy of the board. The other aspect I want to indicate is that the creator of this video was a private individual. He was a proud Muslim, as most Muslims are typically proud of their religion. He made no pretense of neutrality or objectivity that is required by the Establishment Clause jurisprudence. It was, in the credits, it was a tribute to his grandfather. And just as, and this is important, just as Muslim parents would be outraged if the public schools they financially supported and sent their children to would be instructed that Christianity is the true faith, and all the other glowing comments that this intro to Islam made about Islam, they would be outraged, and rightfully so. Why rightfully so? Yes, Your Honor? Why would they be rightfully outraged? Because they sent their school, they allow their children to go to school. It's mandated by the school system and the state that their children go to school. They financially support the school. They want to treat, they don't want the school then to turn around and criticize their religion or approve some other religion as more superior than theirs. And that's what was being done in the intro to Islam. So. All right. Thank you, counsel. Thank you. We will take this interesting case under advisement. We want to thank both counsel for their excellent briefing and oral argument today. And we wish you well and good health.